UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKY J. PRASAD, et al.,<br><br>       Plaintiffs,<br><br>   v.<br><br>CJ INVESTMENT SERVICES, INC., et al.,<br><br>       Defendants. | Case No. 23-cv-06532-RFL<br><br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 26 |

On July 3, 2024, Plaintiffs Ricky J. Prasad ("Mr. Prasad") and Ashika K. Prasad moved to temporarily restrain Defendants CJ Investment Services, Inc. and Sridhar Capital Advisors, LP from conducting a foreclosure sale of their residence, scheduled for July 10, 2024. (Dkt. No. 26.) The Court denied the motion for a temporary restraining order without prejudice as moot after Defendants agreed to change the foreclosure date to August 14, 2024. (Dkt. No. 30.) A hearing to determine whether Plaintiffs were entitled to a preliminary injunction was held on July 30, 2024. For the reasons explained below, the motion for a preliminary injunction is **DENIED**.

**I.   BACKGROUND**

    **A.   Loan Origination**

Plaintiffs purchased the property located at 2300 Evergreen Drive, San Bruno, CA 94066 (the "Property"), in 2021. (Dkt. No. 26-3 ("Prasad TRO Decl.") ¶ 1 & Ex. A.) In early 2023, Plaintiffs began looking to refinance their second position mortgage on the Property. (*Id.* ¶ 2.) Plaintiffs submitted a loan application, which identified the Property as their primary residence, to Main Street Mortgage, but "that refinance[] did not pan out." (*Id.* ¶ 3, Ex. A.)

The next month, Mr. Prasad contacted Defendants about refinancing. (*Id.* ¶ 4.) Sridhar

Capital is a commercial lender, which does not make consumer loans. (Dkt. No. 29-2 ("Sridhar Decl.") ¶ 1.) The parties dispute what and how information was exchanged during the loan application process, but ultimately, both sides proceeded with the loan. (*See* Prasad TRO Decl.; Dkt. No. 29-3 ("Bodien Decl."); Dkt. No. 35-1 ("Prasad PI Decl."); Dkt. No. 38 ("Bodien Supp. Decl.").) On March 31, 2024, Bodien sent an email to Sue Jamieson, a loan processor and alleged agent of CJ Investment, introducing her to Mr. Prasad:

> Sue,
>
> Please meet Ricky Prasad, the primary Borrower on 2300 Evergreen, San Bruno. I've spoken with Ricky and let him know title and escrow have been engaged and we are moving forward with his loan immediately.

(Prasad TRO Decl., Ex. B; Bodien Decl., Ex. G; Prasad PI Decl., Ex. A.)

On April 12, 2023, Plaintiffs signed under penalty of perjury a "Certification of Non-Owner Occupancy and Indemnity," in which Plaintiffs represented that the Property was not their principal or secondary address and instead listed a different address in San Bruno as their "true and only principal address." (Bodien Decl., Ex. C.) Plaintiffs also signed under penalty of perjury a "Business Purpose of Loan Certification," certifying that the purpose of the loan was to "refinance current business purpose loan" and that there were no consumer purposes for the loan. (*Id.*, Ex. D.) A loan agreement for $115,000 with Defendants was signed that date as well. (*Id.*, Ex. F.)[1]

### B.     Attempts at Loan Modification

On April 18, 2023, the loan closed escrow. (Sridhar Decl. ¶ 2.) After that, Plaintiffs made no payments toward the loan. (*Id.* ¶ 3.) Plaintiffs also stopped making payments on the

---

[1] Plaintiffs do not contest the authenticity of these three documents. Rather, Mr. Prasad claims that he told Bodien that Plaintiffs were seeking a loan for their primary residence and that the documents "did not seem right." (Prasad TRO Decl. ¶ 12.) According to Mr. Prasad, Plaintiffs "felt pressured" to sign the documents to secure the loan. (*Id.* ¶ 14.) Mr. Prasad further alleges that Bodien stated he would "make the appropriate changes," but that Plaintiffs "needed to sign the documents right away." (*Id.* ¶ 13.)

first position loan.² (*Id.* ¶ 8.) On August 1, 2023, Defendants entered a notice of default against the Property. (Prasad TRO Decl. ¶ 19.) There is no evidence that Plaintiffs made any attempt in the three months prior to that point to correct any of the signed documents, despite their allegations now that they believed the loan documents to be incorrect all along.

Only after the notice of default was entered did Plaintiffs raise any potential issue. About two weeks after the notice of default, Mr. Prasad sent an email to Jamieson, stating that he and Matt Sridhar, a principal of Sridhar Capital, had spoken the week prior about how the loan was not what Bodien had promised Plaintiffs and that they wanted out of the loan. (*Id.*, Ex. C.) Jamieson responded that she had forwarded Mr. Prasad's email to Sridhar and asked Mr. Prasad for a proposal regarding loan repayment. (*Id.*) On August 21, 2023, Defendants declined Mr. Prasad's proposal to refinance the loan. (Dkt. No. 1 ("Compl.") ¶ 38.) Plaintiffs also declined Defendants' proposed loan modification. (Prasad TRO Decl. ¶¶ 25–32.)

The next month, on September 26, 2023, Mr. Prasad passed along an email that "Darren Nutiana," an Investigator Specialist III with the Office of Inspector General of the Federal Housing Finance Agency, had purportedly "sent to [Mr. Prasad] to send to" Defendants' counsel Ken Van Vleck and Jamieson. (Dkt. No. 29-1 ("Van Vleck Decl.") ¶¶ 8–9.) The forwarded email from Nutiana stated:

> The lenders calculations are erroneous and it's clear as day what type of business they are in. Please have their attorney speak to their client and determine how they want to proceed/settle. Many allegations have been recorded against this Lender and its affiliates in the past several years that are a cause for concern. It is best for the lender to restructure this deal and move on. If their attorney did send you the agreement he must have received direction from the Lender as this is non-standard. We did leave a message for him at the number that was provided.

(Van Vleck Decl., Ex. J.) Attached to the email was a letter—with the FHFA OIG logo printed at the top—addressed to Van Vleck from Nutiana. (*Id.*) There was no address or other contact information for Nutiana. (*Id.*) The letter, which contains many typographical errors, informed

---

² To protect its second position lien, Sridhar Capital has advanced over $119,000 to the first position lender as of May 14, 2024. (Sridhar Decl. ¶ 8.)

Van Vleck of a federal investigation into Mr. Prasad's loan transaction with Sridhar Capital, and stated in part: "What we are asking for is before this comes to light with a federally backed investigation of all assets, documents, personal, business taxes, is that Mr. Matt Sridhar re-calculate this refinance and from Mr. Ricky Prasad standpoint 'to remove the notice of default' so they can refinance out of this lender and the oblivious charges be removed." *Id.*

In forwarding these materials, Mr. Prasad also copied the email to ricky.prasad@doj.gov, which, according to Van Vleck, is a fake email address. (*Id.* ¶ 14, Ex. J.) Van Vleck was also unable to find any information about Nutiana, whom he believes was fictitious. (Van Vleck Decl. ¶¶ 10–11.) When Van Vleck asked Mr. Prasad to connect him with Nutiana directly, Mr. Prasad offered that Nutiana would write him "from his Gmail address." (*Id.* ¶ 12.) Mr. Prasad ultimately did not provide contact information for any government employee, including Nutiana. (*Id.*)

Three days after sending the purported letter from Nutiana, on September 29, 2023, Mr. Prasad informed Defendants that he had filed an "Official Complaint" against them over the loan with the California Department of Justice and Department of Real Estate. (Van Vleck Decl., Ex. K.) Mr. Prasad provided a CA DRE complaint number in the letter and stated, "If, no agreement is made, I will continue with the investigation along with social public announcement coverage." *Id.* Van Vleck, however, was unable to find any evidence of the "Official Complaint" filed by Mr. Prasad. (*Id.* ¶ 17.)

Plaintiffs do not rebut the evidence concerning Mr. Prasad's alleged impersonation of a government agent, only describing Mr. Prasad's statements as "regrettable." (Dkt. No. 35 at 5.)

**C.     Legal Proceedings**

On November 6, 2023, Defendants recorded a Notice of Trustee's Sale against the Property. (Compl. ¶ 39.) Two weeks after that, Plaintiffs filed suit against Defendants in San Mateo Superior Court, seeking to enjoin foreclosure proceedings against the Property and to compel Defendants to restructure the loan. (Van Vleck Decl., Ex. H ("State Court Compl.").) Plaintiffs alleged that Bodien knew that they were seeking a loan on their primary residence and

essentially misled them into signing documents stating the contrary by promising that the loan terms would be modified afterwards.  (*Id.*)  On November 27, 2023, the state court denied without prejudice Plaintiffs' ex parte application for a temporary restraining order to enjoin the foreclosure sale, as Plaintiffs had failed to give the required notice.  (Prasad PI Decl., Ex. D.)  The next day, Mr. Prasad filed for bankruptcy, which automatically stayed the foreclosure.  (Prasad TRO Decl. ¶ 35; *see In re Ricky Jayesh Prasad*, Case No. 23-30807.)

On December 19, 2023, Plaintiffs dismissed their state court action and filed the instant suit against Defendants in this Court.  Plaintiffs sued Defendants for fraud and statutory violations arising out of Defendants' allegedly bad faith conduct during the initial loan origination process and subsequent loan modification discussions.  Defendants have since countersued Plaintiffs for fraud, alleging that Plaintiffs misrepresented the nature of the Property and the true purpose (i.e., consumer, not business) for which they sought the loan.  Defendants further claim that Plaintiffs never intended to repay the loan and instead intended to default on the loan and seek relief by claiming the loan was a personal consumer loan and then seeking rescission.

There is no dispute that the Complaint in this action and the verified state court complaint filed by Plaintiffs both contain false allegations regarding the introductory email Bodien sent on March 31, 2023.  The true and correct version of the email introduced Mr. Prasad as "the primary Borrower on 2300 Evergreen, San Bruno."  (Bodien Decl. Ex. G; Prasad PI Decl., Ex. A.)  The complaints, however, allege that Bodien sent an email that identified Mr. Prasad as "the primary Borrower <u>on their primary residence</u> 2300 Evergreen, San Bruno."  (State Court Compl. ¶ 16; Compl. ¶ 14 (emphasis added).)  A doctored version of the email was attached as an exhibit to the verified state court complaint.  (State Court Compl., Ex. A.)  Although Mr. Prasad claims that he did not see the exhibits to the verified complaint and suggests that his prior counsel must have doctored the email, Plaintiffs do not dispute that they saw the complaint itself, that the text of the complaint falsely attested to the contents of the email, and that they both signed a verification under penalty of perjury to those false statements about the contents of the email.  (*See* Prasad PI

Decl. ¶¶ 5–9, 11.)

Plaintiffs' motion for a TRO referenced the correct version of the email. (Prasad TRO Decl. ¶ 5.) Plaintiffs, however, offer no convincing explanation as to how this correction occurred. Mr. Prasad's declaration asserts that he was unaware of the error in the exhibit prior to the filing of the TRO application in this Court (Prasad PI Decl. ¶ 11), whereas Plaintiffs' counsel represents that they were unaware of the error until *after* Defendants filed their opposition to the TRO request (Dkt. No. 33-1 ¶¶ 8–9). At the hearing on the preliminary injunction request, Plaintiffs' counsel stated that prior counsel, a different law firm, had prepared the federal court complaint using the doctored email, and that when Plaintiffs' counsel prepared the TRO application with Mr. Prasad, Plaintiffs' counsel used the correct undoctored email without realizing the discrepancy. But Plaintiffs' counsel was in fact the same counsel who filed the federal complaint in this matter. (*See* Compl.)

On June 27, 2024, the bankruptcy court granted Defendants and the first position lender relief from the automatic stay after Mr. Prasad failed to make payments in accordance with the approved Chapter 13 plan, thus allowing foreclosure proceedings against the Property to proceed. (Van Vleck Decl., Ex. A.)

## II.  LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit also applies an alternative "sliding scale" approach to the *Winter* factors wherein "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public

interest." *Id.* at 1135.

## III. DISCUSSION

Plaintiffs have not established that the balance of the *Winter* factors supports the issuance of a preliminary injunction.

First, with regard to likelihood of success on the merits, the evidence before the Court supports a pattern of misrepresentations by Plaintiffs, and Mr. Prasad in particular, throughout the events at issue such that the unclean hands doctrine would likely bar any equitable relief for Plaintiffs in this case. "The doctrine demands that a plaintiff act fairly in the matter for which he seeks a remedy. He must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim." *Kendall-Jackson Winery, Ltd. v. Superior Ct.*, 90 Cal. Rptr. 2d 743, 748–49 (Ct. App. 1999), *as modified on denial of reh'g* (Jan. 3, 2000). "The misconduct that brings the clean hands doctrine into play must relate directly to the cause at issue . . . . [T]here must be a direct relationship between the misconduct and the claimed injuries so that it would be inequitable to grant [the requested] relief." *Id.* (cleaned up).

Plaintiffs assert claims for fraud, rescission, and statutory violations against Defendants arising out of the loan origination process and their loan modification proposal. Plaintiffs' alleged misconduct forming the basis for Defendants' unclean hands defense relates directly to these claims and Plaintiffs' request for equitable relief. With regard to loan origination, it is undisputed that Plaintiffs signed, under penalty of perjury, documents stating that the loan they sought was not for their primary residence. Even assuming that Bodien knew that the Property was Plaintiffs' primary residence, as Plaintiffs claim,[3] Plaintiffs knowingly made false representations by signing those documents in order to obtain the loan that they desired.

Furthermore, the evidence shows that Mr. Prasad fabricated documents and investigations in order to obtain more favorable loan modification terms, and that both Plaintiffs signed a state court complaint with false information under penalty of perjury with the goal of forestalling

---

[3] There is little evidence in the record supporting that Bodien knew that Plaintiffs wanted a consumer loan beyond Mr. Prasad's allegations.

foreclosure.  This subsequent misconduct directly relates to the matter at issue because Plaintiffs' complaint is not merely about loan origination but also about the loan modification and foreclosure process.  For example, Plaintiffs allege that Defendants committed fraud by seeking to foreclose on the loan; violated the Truth-in-Lending Act by "attempting to roll [the] default interest into a loan modification, and demanding the default interest under threat of foreclosure"; violated the federal and California Fair Debt Collection Practices Acts by seeking a "loan modification fee"; and violated California Unfair Competition Law by presenting an unfair "loan modification offer."  (Compl. ¶¶ 51, 74, 83, 92, 100.)

Also concerning is that Plaintiffs have sought relief in this Court and in state court using a doctored email.  *See Padideh v. Moradi*, 305 Cal. Rptr. 3d 906, 910 (Ct. App. 2023) ("[O]ne beneficiary of the unclean-hands doctrine is the courts, as its application protects judicial integrity and promotes justice.  It protects judicial integrity because allowing a plaintiff with unclean hands to recover in an action creates doubts as to justice provided by the judicial system.  Thus, precluding recovery to the unclean plaintiff protects the court's, rather than the opposing party's, interests.") (citation and internal quotation marks omitted).

The Court recognizes that the potential loss of one's home is a dire and distressing circumstance, and, as Plaintiffs' counsel noted at the hearing, it appears that Mr. Prasad was desperate to save his family's home.  But the ends do not justify the means.

Second, while loss of their primary residence to foreclosure is an irreparable harm, Plaintiffs have not demonstrated that this harm will be prevented in the absence of preliminary relief.  The parties do not dispute that the first position lender, who is not a party to this case, may foreclose on the Property at any time, as the payments on that mortgage are also past due.  Thus, even if the Court were to enjoin Defendants from foreclosing on the Property, the first position lender could still foreclose, so the requested preliminary relief would not likely prevent the asserted irreparable injury.

Third, the balance of equities does not tip sharply in Plaintiffs' favor.  While Plaintiffs may face a serious harm in the potential loss of their home if the injunction is not granted,

Defendants may also face a significant harm if the injunction is granted. It is undisputed that Plaintiffs have not made any payments on their loan with Defendants, and Defendants have also advanced funds to the first position lender. If the first position lender forecloses on the Property before Defendants do, then Defendants' more junior lien on the Property would be extinguished. Thus, not only would Defendants lose their interest in the Property, but they would also lose all funds delivered to Plaintiffs and advanced to the first position lender, as it is unlikely they will be able to recover from Plaintiffs, who are in bankruptcy.

Finally, the fourth factor—whether the injunction is in the public interest—is a wash. The Court cannot make a determination on this factor given the parties' competing evidence and contentions about what occurred at loan origination. *See Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) ("In deciding a motion for a preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'") (quoting *Dymo Industries, Inc. v. Tapewriter, Inc.,* 326 F.2d 141, 143 (9th Cir. 1964)). What would be in the public interest depends on whether, and to what extent, the allegations of misconduct lodged by both sides are true.

**IV.   CONCLUSION**

Based on the foregoing, Plaintiffs' request for a preliminary injunction is **DENIED**,

**IT IS SO ORDERED.**

Dated: August 1, 2024

RITA F. LIN
United States District Judge